Cal FIORINO, Plaintiff,

v.

William TURNER, Fred Aaron, Systems Development Corporation, and Sierra Research Corporation, Defendants.

Civ. A. No. 74–5644–K.

United States District Court, D. Massachusetts.

Sept. 19, 1979.

Cal Fiorino, pro se.

John W. McCann, Boston, Mass., for Sierra Research Corp.

Dennis F. Liakos, Boston, Mass., for William Turner.

Joseph D. S. Hinkley, Peabody & Arnold, Boston, Mass., for Aaron, Systems Development Corp.

## OPINION

KEETON, District Judge.

This matter is before the court on defendants' motions to dismiss. A hearing on these motions was held on May 30, 1979.

Plaintiff, appearing pro se, alleges in his complaint that defendants have violated 18 U.S.C. §§ 241, 242, 371, and 1001, and 15 U.S.C. § 2. In a memorandum in opposition to defendants' motions to dismiss, filed after the hearing on these motions, plaintiff also claims violations of 42 U.S.C. §§ 1983 and 1985. Plaintiff has not filed an amended complaint, nor has he sought leave to do so.

The statutes whose violation plaintiff alleges in his complaint, 18 U.S.C. §§ 241, 242, 371, and 1001 and 15 U.S.C. § 2, all provide for criminal penalties for their violation.

With regard to the alleged violations of 18 U.S.C. §§ 241, 242, 371, and 1001, plaintiff has failed to cite, and the court has been unable to locate, any authority which would support implying a civil cause of action for violations of these provisions. To the contrary, the case law indicates that violation of these statutes does not give rise to a civil cause of action. *E. g., Brown v. Duggan*, 329 F.Supp. 207 (W.D.Pa.1971) (18 U.S.C. §§ 241 and 242); *Bryant v. Donnell*, 239 F.Supp. 681 (W.D.Tenn.1965) (18 U.S.C. §§ 241 and 371). Nor has plaintiff proffered any policy arguments to support implying a civil cause of action for violation of these provisions in favor of a person in plaintiff's position. With respect to the alleged violations of these provisions, then, plaintiff has failed to state a claim upon which relief can be granted.

In the case of a violation of 15 U.S.C. § 2, however, a civil remedy is expressly provided by statute. 15 U.S.C. § 15. Here, however, plaintiff faces other difficulties. Count VI of his complaint alleges a violation of 15 U.S.C. § 2 consisting of an attempt to monopolize. "To be successful, an attempt case must establish both an intent to monopolize and a dangerous probability of successful monopolization." *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 550 (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). Conspicuously absent from Count VI of plaintiff's complaint is any allegation of dangerous probability of successful monopolization. "[T]his deficiency is fatal to the stating of a cause of action under Section 2 of the Sherman Act." *Unibrand Tire & Product Co. v. Armstrong Rubber Co.*, 429 F.Supp. 470, 477 (W.D.N.Y.1977).

As noted above, in a memorandum filed subsequent to the May 30, 1979 hearing on the motions to dismiss, plaintiff has asserted two additional grounds for liability, 42 U.S.C. §§ 1983 and 1985(3).

 42 U.S.C. § 1983 provides, in part, that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured . . . ." Plaintiff has not alleged any facts which would support an inference that any of the defendants were acting under color of state law. Accordingly, plaintiff has not alleged sufficient facts to support a cause of action under 42 U.S.C. § 1983. *E. g., Briley v. California*, 564 F.2d 849 (9th Cir. 1977).

 42 U.S.C. § 1985(3) creates a damages action against those who conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." in favor of the party injured by the conspiracy. The elements of a § 1985(3) cause of action were stated in *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799 (1971), as follows:

> To come within the legislation a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immuni-

ties under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

In *Griffin* the Supreme Court held that § 1985(3) was intended to reach private conspiracies:[1]

> It is thus evident that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe . . . "that Congress has a right to punish an assault and battery when committed by two or more persons within a State." [Citation.] The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory an-

---

1. *Griffin* involved a conspiracy to interfere with the activities of a black civil rights worker. After finding that § 1985(3) was intended to reach private conspiracies, the Court, in Part V of the opinion, inquired into the constitutionality of § 1985(3) in reaching such private conspiracies, but this inquiry was expressly limited to the facial constitutionality of the statute and its application to the conspiracy alleged in that case: "[W]e need not find the language of § 1985(3) now before us constitutional in all its possible applications in order to uphold its facial constitutionality and its application to the complaint in this case. . . . Our inquiry . . . need go only to identifying a source of congressional power to reach the private conspiracy alleged by the complaint in this case." 403 U.S. at 104, 91 S.Ct. at 1799. The court found two such sources: The 13th Amendment and the right of interstate travel (a right and privilege of national citizenship).

imus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

403 U.S. at 101–102, 91 S.Ct. at 1798 (emphasis in original). In footnotes the Court expressly reserved the question "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under . . . § 1985(3)," 403 U.S. at 102, n. 9, 91 S.Ct. at 1798, n. 9, and indicated that "the motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus." 403 U.S. at 102, n. 10, 91 S.Ct. at 1798, n. 10.

The facts upon which plaintiff relies in support of the causes of action alleged in his complaint (entitled "Complaint & Affidavit & Motion") are set forth in the portion styled "Affidavit." Plaintiff alleges the following facts: (1) He was interviewed on December 2, 1971 by defendant Systems Development Corporation ("SDC") for a position as a computer systems engineer. (2) Defendant Fred Aaron, personnel manager for SDC, told plaintiff on December 8, 1971 that an SDC job offer would depend on references. (3) Plaintiff gave as references Dr. Wang, president of Wang Laboratories, and defendant William Turner, program manager for defendant Sierra Research Corporation ("Sierra"). (At the hearing on the motions to dismiss plaintiff indicated that he had never worked for Sierra but that Turner had been his supervisor at another place of employment.) (4) Turner told plaintiff on December 8, 1971 that he had given a good reference to Aaron and SDC. (5) On January 5, 1972 plaintiff was told that the hiring decision was negative, because of the references. (6) An unidentified industrial consultant told plaintiff on January 6, 1972 that Dr. Wang's reference was excellent but that Turner's was negative: "Cal Fiorino bills himself as an engineer. As an engineer, Cal would make a great salesman." (7) On January 24, 1972, Aaron told plaintiff that the negative fac-

tor in the hiring decision wasn't the references but that Aaron had "found people with a better computer match." In the second paragraph (entitled "Second Conspiracy") of the portion of the complaint styled "Charges" plaintiff alleges a conspiracy whereby defendants Turner, Aaron, and SDC

schemed to deprive plaintiff of his property rights in a reasonably anticipated and probable offer of employment as an SDC computer systems engineer by means of WILLIAM TURNER'S malicious untruthful negative reference as to plaintiff's professional qualifications for said employment, and by FRED AARON'S and SYSTEMS DEVELOPMENT CORPORATION'S deceitful fraudulent cover-up of said malicious and untruthful reference to destroy the possibility of such employment in United States Air Force Work.

In the fifth paragraph (entitled "Fifth Count") of the "Charges" section plaintiff alleges that

defendant FRED AARON, in his capacity as supervisory manager for defendant SYSTEMS DEVELOPMENT CORPORATION, pursuant to said Second Count Conspiracy . . . unlawfully wilfully knowingly committed deprivation of rights under color of law on account of plaintiff's being Italo-American and having age over 40 years . . . whereby such employment was to be given to a non-Italo-American much younger than the plaintiff, and plaintiff was deprived of his rights to equal protection under the laws and to due process rights to protest discrimination on account of plaintiff's ethnic background and senior age.

The First Circuit Court of Appeals has interpreted *Griffin v. Breckenridge, supra,* to require that in a § 1985(3) action "the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." *Harrison v. Brooks,* 519 F.2d

1358, 1360 (1st Cir. 1975); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). *Cf. Francis-Sobel v. University of Maine,* 597 F.2d 15, 17 (1st Cir. 1979) ("Pleading conspiracy under sections 1983 & 1985(3) requires at least minimum factual support of the existence of a conspiracy."); *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir. 1979) ("Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation."). Measured by this standard plaintiff's § 1985(3) claim is deficient and therefore vulnerable to a motion to dismiss. Even assuming that the classes he mentions, Italo-Americans and persons over the age of 40 years,[2] are defined by invidious criteria, plaintiff has failed to allege facts showing that defendants conspired against him because of his membership in these classes.

For the reasons set forth above, it is apparent that none of the plaintiff's theories of liability is viable and that plaintiff has failed to state a claim upon which relief can be granted. Accordingly, defendants' motions to dismiss will be granted and plaintiff's complaint will be dismissed.

---

**2.** One court has held that "alleged discrimination based on age . . . fails to come within the proscription of Section 1985." *Abbott v. Moore Business Forms, Inc.,* 439 F.Supp. 643, 650 (D.N.H.1977) (Bownes, J.). The parties have not cited, nor has the court located, any § 1985(3) cases dealing with alleged discrimination based on nonracial ethnic background. However "[w]hile there is a split of authority on the question of whether a nonracial class-based invidiously discriminatory animus is sufficient for a cause of action under Section 1985(3), the great majority of federal courts have rejected the notion that the statute reaches only conspiracies motivated by racial bias." *Curran v. Portland Superintending School Committee,* 435 F.Supp. 1063, 1085 (D.Me. 1977) (Gignoux, J.) (§ 1985(3) covers sex-based conspiracies).